GEORGE W. REED *vs.* WILLIAM T. MERRIFIELD.

C. conveyed to W., by deed, all the timber on C.'s land, "said W. to have five years to get off said timber, and to have no right to the wood which may arise from cutting the timber·" C. afterwards conveyed the land to R., "excepting a lease of all the timber thereon given by said C. to W.;" and R. conveyed the same land to R. jr. *Held*, that this conveyance to W. was not a grant of any such interest in the land as to give him exclusive possession thereof; that W.'s right of entry to cut and carry away the timber was terminated at the end of five years; and that R. jr., without previous entry, might maintain trespass against W.'s assigns, *for cutting and carrying away timber after the expiration of five years.*

TRESPASS for breaking the plaintiff's close in Hubbardston, and cutting and carrying away timber. Writ dated February 19th 1844.

At the trial in the court of common pleas, before *Merrick*, J. it was admitted that Jason Chamberlain owned the

*locus in quo* on the 11th of August 1836. The plaintiff, to prove his title, produced a deed from said Chamberlain, dated August 15th 1837, conveying the *locus* to Micajah Reed, the father of the plaintiff, "excepting a lease of all the timber thereon given by said Chamberlain to one Alvan Wait," and referring to said lease for further particulars ; also a deed from said Micajah, dated June 15th 1841, conveying the same premises to the plaintiff. He also offered evidence tending to prove that, between the 5th and 19th days of February 1844, (the time alleged in his writ,) a quantity of timber, of the description mentioned in the contract of sale hereinafter mentioned, was cut on said premises, and carried therefrom, by the defendant's directions.

The defendant produced in evidence an instrument under seal, executed by said Chamberlain and Wait on the 11th of August 1836, which contained the following clause : " The said Jason Chamberlain, for and in consideration of the covenants and agreements hereinafter mentioned, doth covenant and agree with said Wait to sell, and by these presents does sell and convey to said Wait all the timber on about one hundred acres which I own in Hubbardston, it being my intention to convey all the timber on my whole lot. What is to be understood by the timber is every species of timber suitable for hewing, sawing, splitting or shaving. And said Wait is to have five years, from the first of April next, to get off said timber from said land ; and said Wait, when he cuts, is to cut clean, leaving all the wood, and doing as little injury to the young growth, as is practicable. And said Wait is to have no right to the wood which may arise from cutting the timber."

It appeared that all the right and interest which said Wait acquired, by virtue of the instrument aforesaid, passed by mesne assignments, and became vested in the defendant and one Upham, on the 15th of January 1841. There was no evidence that the plaintiff had entered into the premises described in his writ, before he commenced this action ; but there was evidence that, in December 1841, there was a conversation between the plaintiff and defendant respecting the plaintiff's purchasing

the timber upon said premises; that the defendant proposed to sell it to the plaintiff for $10; that the plaintiff inquired if the defendant would take his pay in labor, if the plaintiff should conclude to purchase said timber, and that the defendant assented; but that no sale was then concluded. There was also evidence tending to show that, in January 1843, the plaintiff performed certain labor for the defendant, of the value of about $6, which the defendant supposed was to go towards paying for said timber, and also supposed that the plaintiff so understood it. There was also some evidence tending to show that the reason why the defendant did not get off the timber within the time mentioned in said instrument of August 11th 1836 was, that he supposed the plaintiff had accepted his abovementioned proposal to sell, and that, if the plaintiff did not accept that proposal, he (the defendant) was to have a reasonable time to get off the timber, after the plaintiff should give him notice that he did not accept said proposal; that the defendant so supposed until the 18th of January 1844, when the plaintiff claimed pay of his bill for his said labor, and the defendant paid it; that the plaintiff afterwards, a few days before the cutting of the timber alleged in his writ, forbade the defendant's agent to cut it, and that the agent informed the defendant thereof, and that the defendant ordered him to cut off the timber, stating that he (the defendant) had supposed that the plaintiff had accepted his proposal to have it and pay $10 for it in labor, and that said $6 was to have gone towards paying for it; but that the plaintiff had claimed pay in cash for his labor, and that the defendant had paid him therefor, and that the negotiation was at an end.

The defendant contended, 1st, that by the instrument aforesaid, he acquired an interest in the land, and a right to enter and cut the timber, which right could be terminated only by the plaintiff's entry; 2d, that if he acquired no such interest in the land, yet he became absolute owner and possessed of the timber, which he did not forfeit by the termination of the five years mentioned in the original contract; and that, being owner, he had a right by law to enter upon the land, and cut

and carry away the timber, upon the termination of said five years ; 3d, that if the law gave him no such right, by reason of his ownership of the timber, yet the transactions and pending negotiations between the parties gave him a right to enter and cut the timber.

The judge overruled the first two objections, and instruct ed the jury that, on the expiration of the five years mentioned in the original contract, the property in the timber vested in the plaintiff, as owner of the land, and that the defendant had no right to enter and cut it, unless the jury should be satisfied, upon the whole evidence, that the plaintiff gave him a license so to enter, and that such license, if given, had not been revoked by the plaintiff before the entry and cutting ; and that license, if by parol, the plaintiff had a right to revoke at any moment before the entry and cutting by the defendant.

The jury found a verdict for the plaintiff, and the defendant alleged exceptions to the judge's rulings and instructions.

*G. Parker*, for the defendant.

*F. H. Dewey*, for the plaintiff.

HUBBARD, J. It is contended by the defendant that the lease (so called) of Chamberlain, under which the defendant claims as assignee, conveyed an interest in the land, and that, after the expiration of the lease, he became a tenant at sufferance, and so this action will not lie against him before entry by the plaintiff.

The instrument relied upon is the contract or covenant between Chamberlain and Wait for the sale of all the timber on 100 acres of woodland — every species of timber suitable for hewing, sawing, splitting or shaving ; Wait to have five years, from the 1st of April 1837, to get the timber from the land, and to cut clean, leaving all the wood, and doing as little injury to the young trees as practicable, and to have no right to the wood which might arise from cutting the timber. This is a sale of the standing · *timber* on the land, with a right to remove it any time within five years. It is not a grant of the land, nor of any such interest in it as to give

to the lessee any exclusive possession of the land. A mistake is sometimes made by not distinguishing between a right to enter on land for a specified purpose, under a license or contract, and a right of possession by a lessee, to the exclusion of the owner of the fee. The first is not only consistent with the possession of the owner, but does not alter or affect his possession. The latter is a grant of the possession, which cannot be resumed without an entry by the owner, either absolute or constructive. In the present case, the possession of the owner was not changed by force of the contract. The purchaser of the timber had the full right to enter, and cut and carry off the timber, but not to oust or disturb the owner, who reserved to himself the wood cut from the timber in lopping or hewing it, and every other beneficial interest in the land or its issues.

The plaintiff, therefore, as the assignee of the grantee of Chamberlain, was, by force of his deed, in possession of the estate, and there was no necessity of an entry by him to terminate any right on the part of the defendant. The defendant was not a tenant by sufferance. He had no interest in the land; and his right of entry to cut and carry away the timber was put an end to by the determination of the lease. During its continuance, if he had been disturbed in his right of entering and cutting the timber, he could well have maintained an action for such injury, because of his separate interest in the timber. And even an estate of inheritance may exist in the trees on land, while the fee of the soil is in another. *Clap* v. *Draper*, 4 Mass. 266. But here no such estate was created, but simply a right, during five years, to take off the timber growing on the land.

The case at bar is not distinguishable in principle from that of *Pease* v. *Gibson*, 6 Greenl. 81, cited by the plaintiff's counsel, in which the court held that a sale by deed of all the timber trees standing on a parcel of land, the purchaser to have two years to take off the timber, was only a sale of so much of the timber as the vendee might take off in two years, and that an entry by him, after that period, was a trespass,

although, after the time had expired, the land was sold, reserving any rights which the purchaser of the timber might have. And this case is also a full answer to the defendant's allegation that he became the absolute owner of the timber by force of the contract, and that, being the owner, he might lawfully enter, and cut and carry it away, after the period limited in the contract. If this were so, it would not only deprive the owner of the land of the right to cultivate and enjoy it, but it would amount to an indefinite permission to cut and carry off the timber in so gradual a manner that he might avail himself of a second growth before the first was all removed, and thus in fact defeat the owner of his right in the estate, during the life of the vendee. *Gilmore* v. *Wilbur,* 12 Pick. 120.

As to the point raised, that after the five years had passed by, there was an understanding and such negotiations between the parties as amounted to a license to the defendant to enter and take off the timber, without being a trespasser, it has been disposed of by the finding of the jury.

*Exceptions overruled.*