(19 Misc. Rep. 87.)

KENNEDY v. BABCOCK et al.

(Supreme Court, Trial Term, Schoharie County. December, 1896.)

1. MORTGAGE—ACTION TO DECLARE PRIORITY—EQUITABLE JURISDICTION.
    After the signing of a deed and mortgage back for unpaid purchase money, it was, agreed by the parties that the papers should be held in escrow, and not be delivered until a certain date; and thereafter, on the same day, the purchaser executed a mortgage on the land purchased to his wife, which was recorded at once. *Held*, the fact that the priority of record of the wife's mortgage would give it priority in the hands of a purchaser without notice afforded ground for equitable jurisdiction of an action by the vendor to have the priority of his mortgage declared.

2. SAME—SECURING PURCHASE MONEY.
    A wife who joins with her husband in the execution of a mortgage on land for the purchase money cannot acquire a prior lien by a mortgage subsequently executed to her by her husband.

Action by William Kennedy against Addison Babcock and Helen F. Babcock to have the priority of a mortgage held by plaintiff declared. Judgment for plaintiff.

A. L. Kellogg (W. H. Johnson and F. R. Gilbert, of counsel), for plaintiff.

John A. Kemp (Seymour Scott and George M. Palmer, of counsel), for defendants.

MAYHAM, J. The plaintiff prosecutes this action to have a mortgage given by the defendants to the plaintiff for the unpaid balance of the purchase money declared a first lien upon the farm sold by the plaintiff to the defendant Addison Babcock, and prior to a mortgage given by said defendant Addison Babcock to his wife, the defendant Helen F. Babcock, dated on the same day of the date of the mortgage to the plaintiff, but after the execution of the same, and recorded prior to the plaintiff's mortgage. On the 16th day of October, 1895, the plaintiff, who was the owner of a farm of about 240 acres, and the defendants, made an agreement by which the plaintiff agreed to exchange such farm and all the personal property on the same with the defendants for three lots in the village of Oneonta and $4,100, which was to be secured by a first mortgage on the farm. In pursuance of that agreement, the parties met at the law office of Abraham L. Kellogg, in the village of Oneonta, to prepare the necessary papers to carry out such agreement. The title to the Oneonta property stood at that time in the name of Helen F. Babcock, and, as was claimed by the defendant Addison Babcock, belonged to him, and the said Helen F. directed the deed from Kennedy, of the farm, to be given to her husband, Addison Babcock. Kellogg thereupon drew deeds of the farm to Addison Babcock, which were executed and acknowledged by William Kennedy and his wife, and also deeds of conveyance of the three Oneonta lots, to Kennedy, which were executed by Addison Babcock and Helen F. Babcock; also a mortgage for $4,100 on the farm, which was executed by the defendants Addison Babcock and Helen F. Babcock, for the unpaid purchase price of the farm; and a bond accompanying the same, which was signed and acknowledged by the defendants, conditioned for the payment of the said remaining purchase money. After all of these papers were executed and acknowledged, the parties to the same agreed that the draftsman, Abraham L. Kellogg, should retain the same until the 1st day of December, 1895, when they should severally be by him delivered to the persons for whom they were intended,—the deed of the farm to Addison Babcock, the deeds of the three pieces of land in Oneonta to William Kennedy, and also the bond and mortgage given to secure the balance of the unpaid purchase price to William Kennedy. Pursuant to such directions, the papers were retained by Kellogg until the time fixed for their delivery to the parties, respectively, entitled to receive the same, when they were delivered by him as directed. On the same day on which these conveyances and papers were executed, the defendant Addison Babcock executed and delivered to his wife, Helen F. Babcock, a bond conditioned for the payment to her of $4,000, and, as collateral thereto, a mortgage on the farm which Kennedy had deeded to him, but the deed of which had not at that time been delivered by Kennedy to him; and she caused the same

immediately to be forwarded to the clerk's office of Schoharie county for record, and such mortgage was, on the 17th day of October, 1895, recorded in the office of the clerk of Schoharie county.

While there is a sharp conflict between the testimony on the part of the plaintiff and that of the defendant, the foregoing is a summary of the facts which I find from the evidence. Upon these facts, can the plaintiff recover in this action? As this is an equitable action, asking for equitable relief, it must appear, before a recovery can be had, that the plaintiff had no adequate remedy at law.

Two grounds of injury to the plaintiff are urged as the basis of this action: (1) That the recording of the mortgage given by the defendant Addison Babcock to his wife, prior to the recording of the plaintiff's mortgage, to some extent depreciates its value, as it gives it the appearance of a second, and not a first, mortgage. (2) That a purchaser of the mortgage to the defendant Helen F. Babcock, who has no knowledge of the equitable claim of the plaintiff under his purchase-money mortgage, and relying solely upon the priority of the record of the mortgage to her, would be protected against the plaintiff's mortgage. Either of these grounds puts the plaintiff's security at an improper disadvantage, against which an action at law will afford no adequate remedy, and I think brings the action and relief sought within the domain of equitable cognizance.

Having reached the conclusion in this case that the plaintiff's mortgage was a purchase-money mortgage, and executed by the makers of the same prior to the mortgage from Addison Babcock to Helen F. Babcock, it would seem to follow that it should have priority of record, especially as the last-mentioned mortgage was, as we have found, executed and delivered to the defendant Helen F. Babcock before the mortgagor, Addison Babcock, had any legal delivery of the deeds of the farm which he assumed to mortgage to her, and the title had not yet vested in him as the grantee under the deed; and, by the recording of the same in advance of the plaintiff's mortgage, it gave it an apparent priority of lien over that of the plaintiff's purchase-money mortgage. In Freeman v. Schroeder, 43 Barb. 618, it was held that, when there are several mortgages upon the same premises, the one first recorded is presumably the first lien, and entitled to surplus. Unless the plaintiff, by some act or agreement of his, waived the priority of his lien for the unpaid purchase price of this farm, the lien for its payment was prior to any lien that the purchaser could place upon the farm by mortgage, or otherwise, to one having knowledge of the unpaid purchase money; and when, as in this case, the mortgage for the unpaid purchase price was given at the time of the execution and delivery of the deed, the two instruments must be construed together, and the lien for the unpaid purchase money attached eo instante at the time of the taking effect of the deed (Dusenbury v. Hulbert, 59 N. Y. 541); and the deed and mortgage must be construed together (Jackson v. McKenny, 3 Wend. 233; Hitchcock v. Insurance Co., 26 N. Y. 68; People v. Smith, 23 N. Y. 53). And, as the mortgage from Babcock to his wife was executed and recorded before he got any title, the lien of her mortgage was necessarily postponed until the delivery of the deed by the plain-

tiff to Babcock. She had no lien until after the delivery of the deed by the plaintiff to Babcock, and the delivery of the mortgage by Babcock and wife to the plaintiff; and, as the delivery of that deed and mortgage was in law simultaneous, the lien of Mrs. Babcock's mortgage was necessarily postponed until after the lien of the plaintiff's mortgage had attached. Doubtless, that fact would, as between the plaintiff and Mrs. Babcock, be a protection to the plaintiff on the question of priority. But as the priority of the recording, as we have seen, gives apparent priority of lien, a purchaser in good faith of Mrs. Babcock's mortgage, relying upon the priority of record, would, it seems, be entitled to the priority of lien, and entitled to the surplus, or, on the sale of the mortgaged premises, to the proceeds of the sale. Assuming that to be so, it would seem to follow that the aid of a court of equity may properly be invoked to correct the record so as to give to the plaintiff's mortgage its legal priority, and declare the same a lien upon the mortgaged premises, prior to and discharged of any apparent lien of the mortgage of the grantee of the premises to his wife, Helen F. Babcock.

It is insisted by the defendants that the plaintiff waived the priority of his mortgage by an agreement with the defendants that the mortgage to Mrs. Babcock from her husband should be a first lien. As there is a sharp conflict of facts upon this point, I am forced to the conclusion that no such agreement was made, and that the plaintiff had no knowledge of the making of such mortgage, or of its existence, until long after the taking and recording of his mortgage by the plaintiff. This theory is strengthened by the fact that, after the drawing and execution of the papers between the plaintiff and defendants, there was an agreement entered into by them that the plaintiff should be relieved from the exchange of the property on his agreement to pay the defendants $500, which last-mentioned agreement was canceled, and the original agreement carried out by the delivery of the deeds and mortgage; but at the time of making said agreement to pay the $500, or at the time of the release of the same, nothing was said about the mortgage from Babcock to his wife, although, if that agreement had been carried out, the farm of the plaintiff would have been under mortgage to Mrs. Babcock for $4,000.

The plaintiff did not, by accepting a mortgage for the unpaid purchase price, waive his equitable lien, so that the grantee could execute another mortgage to his wife, which would be prior to the plaintiff's mortgage and equitable lien for the purchase money, without the express agreement of the plaintiff to waive such lien. The mortgage to the plaintiff, under such circumstances, represented the equitable lien for the purchase, but had the effect to regulate the time of the payment of the same. Boies v. Benham, 127 N. Y. 620, 28 N. E. 657. The equitable lien for the purchase money was created eo instante with the making of the deed of conveyance, and the continuity of the lien was not broken by the taking of the mortgage; so that the taking of the plaintiff's mortgage commenced as, and continued to be, a prior lien to that of any mortgage that the grantee could put upon said premises. While it may be conceded that the mortgage given by Babcock to his wife is, as between them, a valid

·security, yet, as it was executed after the execution of the mortgage to the plaintiff, to her knowledge, and as the plaintiff's mortgage is for the purchase money of the farm, the priority of its lien cannot be divested without the express agreement of the plaintiff, which, as we have found, was not made. Under these circumstances, I am ·of the opinion that the plaintiff should have a decree declaring and ·adjudging his mortgage a prior lien on the farm in question, free ·and discharged from any interest or claim that the defendant Helen F. Babcock, or her assigns, has or may have, under or by virtue of the mortgage given to her by Addison Babcock, and that the plaintiff recover judgment for the costs of this action.

Judgment for plaintiff, with costs.